JOHN A. FORS et al. Appellees, vs. A. E. ANDERSON et al. Appellants.

*Opinion filed October 27, 1915—Rehearing denied Dec. 9, 1915.*

1. INJUNCTION—*a court of equity may enjoin the obstruction of a public highway.* A court of equity may enjoin the obstruction of a public highway where the right is clear and appertains to the public or where an individual is injuriously and directly affected by the obstruction in a manner and degree different from the public at large.

2. SAME—*injury need not be so great as to be beyond possibility of compensation.* While the complainants' right must be clear to authorize the enjoining of an obstruction in a public highway and it must appear that the obstruction of the easement will be an irreparable injury, yet it is not required that the easement be absolutely necessary or that the injury be so great as to be beyond the possibility of compensation in damages.

3. SAME—*when highway commissioners are proper parties complainant.* Highway commissioners are proper parties complainant to a bill to enjoin the obstruction of public highways, even though part of the land embraced in the highways was originally platted as part of a village, where the owners of such land constructed their fences so as to allow the land to be in the highways, which have been extensively traveled by the public and accepted and worked by the highway commissioners for more than thirty years.

4. SAME—*when individuals are proper parties to bill to enjoin obstruction of highways.* Individuals who own land abutting upon a road and who have built their fences and erected their buildings with reference to the road as a means of access to and egress from the property are proper parties complainant in a bill to enjoin the obstruction of such roads.

5. APPEALS AND ERRORS—*when decree will not be reversed for misjoinder of parties.* If part of the complainants in a bill to enjoin the obstruction of public highways are proper parties and are entitled, under the facts, to the relief decreed, the decree will not be reversed because of the misjoinder, as parties complainant, of two individuals whose injury is not shown to be different in kind or degree from that of the public at large, neither of them owning any land adjacent to the highways.

APPEAL from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding.

WALKER, INGRAM & SWEENEY, (HENRY WATERMAN, of counsel,) for appellants.

STURTZ & EWAN, and ALMON H. LINN, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree for a perpetual injunction restraining the defendants to the bill, appellants here, from closing or obstructing two alleged public highways and ordering the removal of certain obstructions placed in one of them. The bill was filed by John A. Fors, Lewis Schmoll and Bengt Anderson, as commissioners of highways of Andover township, Henry county, and John A. Charlson, George W. Anderson and A. G. Anderson, owners of lots in the village of Andover, and Carl J. Westring, who owned farm land adjoining the road on the east side of the village of Andover and a lot on the east line of said village. The defendants to the bill, appellants here, are the president and trustees of the village of Andover.

The village of Andover was platted in 1838 to include the south half of section 8 and the north half of section 17. It was a mile square and was laid off into forty-nine blocks, being seven blocks north and south and the same east and west. The blocks were divided into four lots of two and one-half acres each, with streets running north and south and east and west between the blocks. From north to south the streets were named by numbers from First street, which is the north boundary of the village, to Eighth street, which is the south boundary. On the east boundary, outside the lot lines, the plat shows a narrow strip thirty links wide at the south end and running to a point at the north end, which is designated Ash street. From there west the streets are, Beech, Cedar, Elm, Locust, Mulberry, Oak, and a narrow strip outside the lot lines on the west border is designated Pine street, which according to the

plat is twenty-four links wide at the south end, fifteen links wide at the center and sixteen links wide at the north end. The highways the obstruction of which is complained of, are a road running north and south along the east side of the village, including the strip marked on the plat as Ash street, and the road running north and south on the west side of the village, which includes the strip designated on the plat as Pine street.

The bill alleges the village of Andover is an incorporated village lying within Andover township; that certain highways running along the east and west boundaries thereof, about four rods wide, have been used for highways for about fifty years, and for the past thirty years adjacent property owners have recognized the boundary lines by the construction of fences, walks, bridges and buildings, and that two cemeteries, one on the east and one on the west side of the village, were laid out with reference to said highways. The bill alleges that two of the defendants, A. E. Anderson and Frank Carlson, have obstructed the highway on the east side of the village by building fences therein, and that defendant Anderson has torn out a bridge in said highway sixteen feet wide and eight feet long which lay almost wholly outside the village, and that said defendants were encouraged, urged and directed in these acts by the other defendants; that the defendants, as trustees of the village, passed a resolution purporting to vacate both of said highways and attempted to pass an ordinance for the vacation of the east highway; that defendants threaten to close both highways and will do so unless restrained by injunction; that if said highways were closed it would destroy complainants' direct means of ingress to and egress from their lots, irreparably injure them by shifting the lot lines, and cause a multiplicity of suits. It is further alleged the village trustees have caused two or more surveys of the village to be made in the last few years, and have

sought to disturb the lot owners in the village and the owners of land adjoining the village in their property rights. The prayer of the bill is that defendants be enjoined from passing an ordinance or resolution, as trustees of the village of Andover, vacating Ash and Pine streets, or either of said highways or any part thereof, and from placing any fences or obstructions therein and from removing any bridge; also that defendants Anderson and Carlson be required by order of the court to remove the fences and obstructions placed in said highway by them.

The answer admits there are roads or public highways along the eastern and western boundaries of the village used for travel to a limited extent but denies they have been used fifty years; admits property owners and the village have recognized the said roads, built fences, dwelling houses and walks along portions thereof for thirty years; that the village built a bridge in one of said highways and the commissioners of highways built a bridge in the other one; denies that the cemetery on the east side abuts the highway, and denies the charge in the bill that defendants were guilty of any fraud or that they were actuated by spite. The answer then takes up the question of the location of the fences enclosing property in the village and avers the fences were not built on the correct lines, as a consequence of which some fences encroached on the streets in places and in other places parts of lots were left out in the streets; that the village authorities desired the property owners to place their improvements on the true line and had persuaded many of them to do so. The answer avers that the place where defendant Anderson built the fence complained of was not a public highway for fifty years but was the east line of his lots 1 and 28, and no legal highway existed on the east portion of said lots. Like averments are made as to the fence built by defendant Carlson. The answer denies the allegations of the bill as to

the effect of closing said highways on the ingress to and egress from complainants' property, and avers that when the fences were originally built on the east side of the Anderson and Carlson property, by mistake they were placed west of the east line; that the Anderson fence was placed twenty-six feet west of the line and the fence of Carlson was placed twenty-two feet west of the true line, and denies that any part of said twenty-six feet or twenty-two feet was ever dedicated for a street or ever accepted as such by the village. The answer avers that placing the fences on the true line on the east would allow the removal east of the fences on the west line of the blocks, which it is averred are in Beech street, the first street west of the road on the east side of the village. The answer denies that complainants show any right to maintain the bill or that the commissioners of highways have any jurisdiction over the roads and alleges they are under the control and jurisdiction of the village.

The cause was referred to the master in chancery to hear the testimony and report his conclusions of law and fact. After hearing the testimony the master reported that the proof sustained the allegations of the bill, and recommended that the temporary injunction granted upon filing the bill be made permanent and that the mandatory injunction should issue requiring defendants to remove the obstructions placed in the east highway and to restore said highway to the condition it was in prior to the building of the fences by defendants Carlson and Anderson. Exceptions to the master's report by the defendants were overruled by the chancellor and a decree was entered enjoining defendants from occupying or obstructing the road running north and south on the east side. of the village, (commonly called Ash street,) or from occupying or obstructing the highway on the west side of the village, (commonly called Pine street,) and from in any way preventing the free use

270 — 4

of said highways for travel by the public. The defendants were ordered by not later than April 1, 1915, to remove the fences and obstructions placed in the said east highway by defendants Anderson and Carlson, and to leave the portions of the highway obstructed by them in the same condition they were in prior to the erection of the fences in the highway by said defendants Anderson and Carlson.

The master found from the evidence that public highways running north and south existed on the east and west borders of the village; that they were extensively used for travel by the public generally; that they varied in width at different points, being sixty feet wide in some places and at others thirty feet wide; that they had been used by the public for more than fifty years with the knowledge, consent and acquiescence of the owners of the land over which they passed and of the village of Andover and its trustees and officers; that all of the property owners on both sides of each of said highways, and the village of Andover, had for more than thirty years last past recognized the existence of said highways as they existed before their obstruction by the defendants, by building and maintaining fences, growing hedges and trees along each side thereof, the construction of dwelling houses and out-buildings with reference to said highways, the building of bridges therein by the village of Andover or the commissioners of highways, or both, and by the improvement of said highways by grading and otherwise. The master further found that the road on the east side of the village, called Ash street, was irregular in width; that for the last fifty years fences had existed on both sides of it throughout its entire length adjoining the village; that most of the fences were hedge, but some were made of posts and boards and others of posts and wire; that the fences had been continuously maintained on both sides of the road in the same location for fifty years before defendants Anderson and Carlson placed

fences in the highway; that during all said period of fifty years said road was extensively traveled by the public as a highway; that said road included all of what was designated as Ash street and a strip of land lying west of it along practically the entire east side of the village; that it had been graded from time to time by the commissioners of highways of Andover township; that the bridge or culvert had existed in the highway for many years but it was not shown by the evidence who constructed it; that at different times it had been repaired by the commissioners of highways; that on the east side of the road two residences were built fronting it and a number of large old trees were growing along the line of the fence on that side; that on the west side in the village of Andover a number of dwellings were built fronting the road and other buildings and improvements made with reference to the road and its use as a means of ingress to and egress from the premises; that for a continuous period of from thirty to forty years it was extensively used by the public as a highway and improved and maintained as such with the knowledge of adjoining property owners. The master concluded that the road between the lines of fence was a public highway both by prescription and by dedication. He reported that the proof established substantially the same facts with reference to the existence of a public highway on the west side of the village, and that the same rules of law were applicable to it, under the proof, as were applicable to the road on the east side of the village.

For the last few years there had been some agitation as to the correct lines of the lots and blocks in the village of Andover. It appears some of the residents of the village, among whom were defendants, or some of them, were of opinion the fences enclosing many of the lots and blocks were not on the true lines and efforts appear to have been made to have them changed. Some of them were changed

either by the owners or by the trustees, and in 1903 the village board caused a re-survey of the village to be made by A. L. Richey, county surveyor of Knox county, and C. C. Martin, county surveyor of Henry county. By that survey the lot lines in most of the blocks of the village appeared not to be the same as the fences enclosing the lots and blocks. On the east border of the village the Richey and Martin survey located the lot lines several feet out in the highway east of the fences. Along the east line of defendant Anderson's property that survey located the lot lines twenty-six feet east of the fences, and along the Carlson property it located the lot lines some twenty-two feet east of the fences. Apparently the Richey and Martin survey was not satisfactory to everyone affected thereby, and three years later another survey was made of the village by the county surveyors of Stark, Warren and McDonough counties, known as the board of surveyors. Their survey did not agree with the Richey and Martin survey as to the location of the lot lines and streets. Much of the argument of counsel on both sides is devoted to a discussion of which of these two surveys was the more reliable, but as the bill did not ask, and the decree did not grant, any relief except as to the two roads on the east and west sides of the village, we do not consider it important to express an opinion as to the merits of the two surveys, as the question here involved is whether a public highway existed on the east and west sides of the village by prescription or dedication, or by both. That was the only question adjudicated by the trial court.

The village of Andover has a population of between two and three hundred people and was incorporated in 1894. It was platted in 1838, and the plat shows a wedge-shaped strip of land on the east, about twenty feet wide at the south end and running to a point at the north, designated Ash street, and a narrow strip outside the lot lines

on the west, of varying width, designated Pine street. For fifty years or more these strips of land have been used as parts of the roads running north and south along the east and west sides of the village. For more than thirty years there have been fences on each side of the roads, placed and maintained there by the owners of the land. Buildings have been erected fronting the roads and trees planted along the fence lines, some of which have grown to be large trees. During all this time these highways have been used by the public for travel and they have been worked and improved by the commissioners of highways of Andover township. The decree finds that the two highways had existed and been traveled extensively by the public for approximately fifty years, during all of which time there were fences along each side of said highways. As to the highway on the east side, the decree specifically finds that it had been graded from time to time by the commissioners of highways and the bridge repaired by them; that residences were built fronting on the road on the east side and on the west side; that they and other out-buildings were erected with reference to the road and to its use as a means of ingress to and egress from the respective premises on both sides; that from thirty to forty years it was used as a highway and improved and maintained as such with the knowledge of adjoining property owners; that its use has been open, notorious, continuous, uninterrupted and adverse for a period of at least thirty years, and that it is a highway both by prescription and by dedication. The decree further finds from the facts that the same rule of law applies to the road on the west side of the village, and that it also is a highway by prescription and by dedication. The findings of the decree as to facts are supported by the testimony.

Defendant Anderson owns the northeast block in the village. He constructed a post-and-wire fence east of the middle line of the highway, forty rods long north and

south, and then connected the east and west fences on the north and south sides of his land with the fence placed in the highway, enclosing and completely obstructing a portion of the highway, leaving open only about twenty-seven feet of the road. Defendant Carlson owns the east half of next to the southernmost block lying on the east side of the village. He placed a fence of post and wire in the road forty rods long north and south and twenty feet east of the fence on the west side of the road, and connected his east and west fences on the north and south sides of his property with the fence he placed in the highway.

It is contended by defendants that the subject matter is not one for the exercise of the jurisdiction of a court of equity, and also that the complainants have no standing to invoke the aid of a court of equity. It is insisted that the commissioners of highways had no right to maintain the bill for the reason that the obstructions in the east highway were within the village limits, and that the streets and highways in incorporated cities and villages are under the exclusive jurisdiction and control of the municipal authorities; and that the individual complainants have no right to maintain the bill because it is not shown that they will sustain any private injury from obstructing or closing the roads but that any injury they sustain is such as will be sustained by the public generally.

That courts of equity will interpose by injunction to prevent the obstruction of a public highway where the right is clear and appertains to the public or where an individual is injuriously and directly affected by the obstruction in a different manner and degree from the public at large has been held many times by this court. (*Green* v. *Oakes,* 17 Ill. 249; *Snell* v. *Buresh,* 123 id. 151; *Chicago General Railway Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 181 id. 605; *Nelson* v. *Randolph,* 222 id. 531; *Waller* v. *Village of River Forest,* 259 id. 223; *Hillmer Co.* v.

*Behr,* 264 id. 568.) To authorize the interposition of a
court of equity it is necessary that complainant's right be
clear and it must appear the obstruction of the easement
will be an irreparable injury. But that does not mean the
injury must be great or beyond the possibility of compen-
sation in damages. If the easement is highly convenient
and beneficial it is not required that it be absolutely neces-
sary. *Newell* v. *Sass,* 142 Ill. 104; *Smith* v. *Young,* 160
id. 163.

We think it clear from the evidence that the chancellor
was justified in finding and decreeing that the two roads
were public highways both by dedication and by prescrip-
tion. That parts of them embraced land that had been
originally platted as a part of the village of Andover we
think makes no difference. Many years before the organi-
zation and incorporation of the village the owners of the
land abutting on each side of the roads built their fences
so as to leave them open to the public travel. They were
extensively traveled by the public and accepted by the com-
missioners of highways, who repaired and maintained them
at the public expense for a period of at least between thirty
and forty years. It could hardly be contended that the
owners of land on the east side of the east highway and on
the west side of the west highway could move their fences
out into them and obstruct them. As against them, clearly
the roads exist as public highways both by prescription and
by dedication. We know of no reason why the fact that
the land on the opposite sides of the roads was platted for
a village could prevent the land on that side embraced in
the roads from becoming a part of the highways by pre-
scription or dedication. The original proprietors of the
land platted for the village sold the land from time to time
to different parties, who took possession of, fenced it and
constructed buildings thereon. At the time the village was
incorporated, and for thirty years before, the two roads

in controversy had been public highways. Neither of the strips marked on the plat "Ash street" and "Pine street" was ever used and regarded as a street. The owners of the land on the west side of the so-called Ash street built their fences so as to leave not only that strip but part of the lots on the west of it in the highway, and neither the property owners nor the village authorities can at this late day close or obstruct the highways. The commissioners of highways were authorized to maintain the bill because they represented the public and public rights were involved.

Complainant G. W. Anderson owned and lived on lots 29 and 56, on the east border of the village, extending forty rods north and south along the highway. His house fronted the highway, and his buildings were built with reference to the highway and its use in getting in and out of the premises. Complainant Westring owned and lived on land on the east side of the highway and also owned lot 85 lying along the west side of the highway. The proof shows that obstructing the highway injured him and G. W. Anderson in a different degree and kind from that suffered by the public at large, and under the authorities above cited they were proper parties to the bill. Complainants John Charlson and A. G. Anderson owned no land adjacent to either of the highways, and their injury from closing or obstructing them was not shown to be different in degree or kind from that suffered by the general public. They were not proper parties complainant, but as in our view the other complainants had a right to maintain the bill and to the relief granted, we would not be justified in reversing the decree because of the misjoinder.

The decree was warranted by the law and the evidence and is affirmed.

*Decree affirmed.*