(No. 13451.—Reversed and remanded.)

ALFRED STEPHENS *et al.* Defendants in Error, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY *et al.* Plaintiffs in Error.

*Opinion filed April 19, 1922.*

1. JURISDICTION—*legislature cannot deprive the circuit court of equitable jurisdiction.* The constitution confers upon the circuit court jurisdiction of all causes in equity, and the legislature is without power to deprive the court of any part of this jurisdiction.

2. INJUNCTION—*equity has jurisdiction to enjoin the creation or compel abatement of nuisance.* A court of equity has jurisdiction to enjoin the creation or compel the abatement of a public nuisance at the suit of the Attorney General or other authorized public official, or of an individual to whom or to whose property it causes or will cause a special and particular injury, as well as a private nuisance at the suit of the injured person.

3. SAME—*in a proper suit equity may compel removal of obstructions from public highway.* An unauthorized obstruction of a public highway is a public nuisance, and it is within the jurisdiction of a court of equity to grant relief by injunction for the prevention or removal of such obstruction at the suit of the proper officials in behalf of the public or of an individual who is directly and specially injured by the obstruction.

4. HIGHWAYS—*when commissioners cannot maintain a bill to compel railroad company to remove obstructions.* The commissioners of highways are not proper parties complainant in a bill to compel a railroad company to remove, as obstructions to travel, pillars set in the roadway of a State aid road to support a bridge of the railroad company over such State aid road.

THOMPSON, J., STONE, C. J., and FARMER and DUNCAN, JJ., specially concurring.

303—4

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

J. A. CONNELL, and W. O. POTTER, (R. B. SCOTT, of counsel,) for plaintiffs in error.

H. V. FERRELL, and E. M. SPILLER, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The commissioners of highways of the town of West Marion, in Williamson county, filed their bill in the circuit court of that county on August 17, 1917, against the Chicago, Burlington and Quincy Railroad Company and the Herrin and Southern Railroad Company, for an injunction requiring the defendants to remove certain obstructions which the bill alleged constituted and were a public nuisance, from a highway, to restore the highway to its condition before the obstructions were placed in it, and enjoining the defendants from maintaining such obstructions. Upon the appeal of the defendants the Appellate Court reversed the decree of the circuit court, which granted the relief prayed for, and remanded the cause, with directions to enter a modified decree for a part, only, of the relief asked, and a writ of *certiorari* was allowed on the petition of the railroad companies for the purpose of reviewing the record.

The plaintiffs in error offered no evidence and the cause was submitted on the evidence of the defendants in error, which showed these facts: About January 1, 1913, the Herrin and Southern Railroad Company constructed, and the Chicago, Burlington and Quincy Railroad Company under agreement with the former company has since that time operated, a railroad in the town of West Marion, which

crossed, about two and one-fourth miles west of the city of Marion, the Marion and Carbondale road, which has been a public highway of the width of fifty feet for fifty years. It is an overhead crossing, and the railroad track was supported by three rows of six posts about twelve inches in diameter, the center row being in the center of the highway and of the traveled track and the other rows north and south, respectively, and nineteen feet distant from the center row. After the construction of the railroad a concrete hard road was constructed from the city of Marion west to a point two miles west of the crossing, with the exception that such concrete road was not constructed under the railroad and for a space of about thirty-eight feet on either side of it. The circuit court found that the three rows of posts constituted a material and substantial obstruction to the free passage of persons, in vehicles or otherwise, lawfully having a right to travel over the highway, and decreed that defendants remove them within sixty days and restore the highway at the crossing to as good condition as when the posts were placed in the highway, and that the defendants be perpetually enjoined from maintaining the posts in the highway after sixty days. The Appellate Court reversed the decree and remanded the cause, with directions to enter a decree ordering the plaintiffs in error to remove the center row of posts within six months from the date of the decree and to restore that portion of the highway to as good condition as it was in when the posts were placed there and enjoining the plaintiffs in error from thereafter maintaining said center row of posts.

The jurisdiction of the circuit court of the subject matter of this suit cannot be questioned and is not in controversy. The constitution confers upon the circuit court jurisdiction of all causes in equity, and the legislature is without power to deprive it of any part of this jurisdiction. A court of equity has jurisdiction to enjoin the creation or compel the abatement of a public nuisance at the suit of the

Attorney General or other authorized public official, or of an individual to whom or to whose property it causes or will cause a special and particular injury, as well as a private nuisance at the suit of the injured person. An unauthorized obstruction of a public highway is a public nuisance, and it is within the jurisdiction of a court of equity to grant relief by injunction for the prevention or removal of such obstruction at the suit of the proper officials in behalf of the public or of an individual who is directly and specially injured by the obstruction. *Fors* v. *Anderson,* 270 Ill. 45; *Green* v. *Oakes,* 17 id. 249.

The chief question argued is the right of the highway commissioners to maintain the suit, the plaintiffs in error contending that the Public Utilities act in force when the suit was brought, and since, deprived the highway commissioners of any authority to represent or act for the public in respect to highways at railroad crossings and placed the entire subject matter of such crossings in the hands of the Public Utilities Commission. At the time the overhead crossing involved in this case was constructed, and until July 1, 1913, the highway commissioners had charge of the roads and bridges in their respective towns, and by paragraph 5 of section 19 of the Railroad Incorporation act every corporation formed under the act was authorized to construct its railway across any highway which its route intersected, subject to the duty of restoring the highway to its former state or to such state as not unnecessarily to have impaired its usefulness. This was an absolute grant of power by the State to the railroad company to construct its road across any highway and no consent of the highway commissioners was required, such consent being necessary only where the railroad was to be constructed along,— that is, lengthwise,—of the highway. (*County of Cook* v. *Great Western Railroad Co.* 119 Ill. 218.) The right of crossing the highway was subject to the condition that the company should restore the highway so as not unneces-

sarily to impair its usefulness, and this court suggested in *Chicago General Railway Co.* v. *Chicago, Burlington and Quincy Railroad Co.* 181 Ill. 605, that an unnecessary obstruction caused by the construction of an overhead crossing could be enjoined in a suit on behalf of the public.

In 1913 the law in relation to roads and bridges was codified, revised and amended. (Laws of 1913, p. 521.) Paragraph 6 of section 50 of the revised act provided that the highway commissioners should have general charge of the roads and bridges of their respective towns or districts and keep them in repair and improve them so far as practicable. This was a re-enactment, with slight change of diction, of the previous law, but article 2 of the act created a State highway department and State Highway Commission, and provided that the State Highway Commission should have general supervision of highways and bridges constructed, improved or maintained, in whole or in part, by the aid of State moneys. This article provided for the method of construction of roads by the aid of State moneys, and required such roads and bridges to be kept in repair by the State Highway Commission at the cost of the State. State aid roads were thus specifically excluded from the general charge of the highway commissioners and transferred to the State Highway Commission. At the same session of the legislature the Public Utilities act was passed, section 58 of which prohibited the construction of new grade crossings of highways by railroads but expressly declared that the section should not apply to the replacing of existing crossings. In 1917 these acts were both amended, the Road and Bridge act to provide for the election of one highway commissioner instead of three, the Public Utilities act to bring under the control of the Public Utilities Commission any railroad highway crossing, whether at grade, overhead or by subway. The amendment in question of the Public Utilities act consisted of the addition to section 58, among other things, of the fol-

lowing: "The commission shall also have power by its order to require the reconstruction, alteration, re-location or improvement of any crossing (including the necessary highway approaches thereto) of any railroad across any highway or public road, whether such crossing be at grade or by overhead structure or by subway, whenever the commission finds after a hearing that such reconstruction, alteration, re-location or improvement is necessary to preserve or promote the safety of the public or of the employees or passengers of such railroad. By its original order or supplemental orders in such case, the commission may direct such reconstruction, alteration, re-location or improvement to be made in such manner and upon such terms and conditions as may be reasonable and necessary, and may apportion the cost of such reconstruction, alteration, re-location or improvement between the railroad company or companies and other public utilities affected, or between such company or companies and other public utilities and the State, county, municipality, or other public authority in interest. The cost to be so apportioned shall include the cost of changes or alterations in the equipment of other public utilities affected as well as the cost of the relocation, diversion or establishment of any public highway, made necessary by such reconstruction, alteration, re-location or improvement of said crossing."

Since both of these acts, originally passed at the same session of the legislature, were amended subsequently at the same session of the legislature, they must be construed together as one act so far as they relate to the same subject and with reference to the rule of law stated in Endlich on Interpretation of Statutes, sec. 399: "Where, therefore, there is in the same statute a particular enactment and also a general one, which in its most comprehensive sense would include what is embraced in the former, the particular enactment must be operative and the general enactment must be taken to affect only such cases within

its general language as are not within the provisions of the particular enactment. It follows that where an act in one set of provisions gives specific and precise directions to do a particular thing, and in another set prohibits, in general terms, the doing of that which in the broad sense of the words used in the latter would cover the particular act authorized by the former, the more general provisions can not be deemed to include the matters embraced in the more specific ones."

The general language of the Road and Bridge act in conferring upon the highway commissioners general charge of the roads and bridges of their towns and upon the State Highway Commission general supervision of highways and bridges constructed, improved or maintained, in whole or in part, by the aid of State moneys, is sufficiently comprehensive to include all parts of all roads in the State outside of cities and villages and leaves nothing for the amendment which has been quoted to operate on. If the charge and supervision of roads given to highway commissioners and the State Highway Commission give to these bodies charge and supervision of the crossings of highways by railroads, then the amendment of section 58 of the Public Utilities act is of no effect. In accordance with the rule quoted, therefore, the particular enactment of the provisions giving specific and precise authority in the particular matter of crossings of highways by railroads must be given effect in those particular cases, and the more general provisions of the Road and Bridge law cannot be held to apply. If the commission has authority to order the reconstruction or alteration of the crossing of the railroad over the highway in such manner and upon such terms and conditions as may be reasonable and necessary and apportion the costs among the company, the county, town and other public authority, then for that purpose it must have the sole authority, subject to the judicial review of its decision as provided by the act. The question whether the public safety

requires the reconstruction or alteration of the crossing of a public highway by a railroad is an executive question, the decision of which may be committed to an administrative body such as the Public Utilities Commission, subject to review by a court as to the reasonableness of its conclusion, and such action is not a delegation of legislative authority. (*Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 Ill. 609; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Lake County,* 287 id. 337.) The legislature has the power to confer authority over the public highways throughout the State upon such local or State officers as it deems best and may divide the authority in such manner as it chooses. The authority over railroad crossings of highways, the place, manner, terms and conditions of such crossings, their construction, reconstruction, alteration or improvement and the apportionment of their cost, has been conferred upon the Public Utilities Commission. Such authority in its nature must be exclusive. Before 1913 railroad companies had the right to cross any highway, and there was no authority to control the manner of crossing or construction, except that it must not unnecessarily impair the usefulness of the highway. The highway commissioners having charge of the highway were the public officials who had authority to enforce the requirement by bill in chancery or petition for *mandamus* in behalf of the public. Now, however, neither the highway commissioners nor the State Highway Commission can maintain a proceeding for that purpose. They have no duty to perform in regard to railroad crossings. The railroad company is bound to obey the order of the Public Utilities Commission, upon which control in the matter of the crossing has been conferred by law. It is immaterial that no order has been made by the commission. It is the only body authorized to order a reconstruction, alteration or change in the crossing, and the fact that it has made no order for that purpose does not authorize any other indi-

vidual, official or board to assume authority to do so. The court can make no order in this case directing any change in the crossing, not because it is without jurisdiction to do so when application is made for that purpose in a proper case, but because the defendants in error have no right to sue. It is only upon a failure to obey a proper order of the commission that the railroad company becomes a wrongdoer. The Public Utilities Commission, alone, was authorized to represent the public, to order changes in the crossing and to apply to the court for enforcement of its orders. No authority has been conferred upon the defendants in error, the highway commissioners, to appear for and represent the public in regard to this crossing. The bill stated no cause of action which they were entitled to maintain.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*

THOMPSON, J., STONE, C. J., and FARMER, J., specially concurring:

We concur in the conclusion reached in the principal opinion that the commissioners of highways, as such, were without authority to institute or maintain this suit and that the suit must for that reason be dismissed. The road in question is a State aid road, and the State highway department has jurisdiction of it to the exclusion of the commissioners of highways. The parties complainant having no right to institute or maintain this suit, the circuit court and the Appellate Court were without authority to enter a valid order affecting the merits of this controversy. Inasmuch as the suit must be dismissed for want of necessary parties complainant, it is neither necessary nor proper to consider or decide other controverted questions. (*McMechan v. Yenter,* 301 Ill. 508; *Abernathie v. Rich,* 229 id. 412.) We do not concur in the statement that the Public Utili-

ties (now Commerce) Commission is the only proper party complainant in an action of this nature.

Mr. JUSTICE DUNCAN, also specially concurring:

I also concur in the conclusion reached in the opinion delivered by Mr. Justice Dunn that the commissioners of highways were without authority to file the bill in this case and that the suit for that reason, only, should be dismissed. As a matter of fact, not, however, appearing of record, the obstructions have been removed many months ago by the railroad companies and while this case was pending for decision in this court, and the overhead structures have been changed and re-built by the railroad companies and without any authority or direction of the Public Utilities Commission. All the questions submitted to this court for decision are moot questions and there is no occasion or necessity for further litigation in this case, and had the decision of the court been placed upon the single ground that the proper parties are not complainants in the bill, in accordance with the usual custom of this court when proper parties complainant are not before the court and have not been heard upon the merits, no discussion of the merits of the case would have been indulged in by us. I cannot consent, however, to be understood, by implication or otherwise, as assenting to the proposition that the circuit court can be ousted of its original jurisdiction of the subject matter of this suit, or that the Public Utilities Commission has any jurisdiction or authority whatever to decide any question arising on this record.

The substance of the charge in this bill is, that the pillars or posts in question obstruct the traffic and travel on the public highway and constitute a public nuisance for that reason, only. There is no suggestion or charge of any kind in the bill that the pillars or overhead structures are unsafe or dangerous to the traveling public or to the employees or passengers of the railroad companies while crossing that

crossing, or that for any reason other than already stated any part of the structures there should be changed or re-constructed. The answer of the railroad companies simply denies that the pillars obstruct the highway; avers that the public in general is using and can use the highway as a public thoroughfare without hindrance by the posts and de-nies that they constitute a public nuisance; denies the right of defendants in error to maintain the suit; alleges that the commission aforesaid is the proper forum and has the power and authority to order or refuse a change in the construction of said crossing, and argues that the circuit court is without authority or jurisdiction to enter any de-cree or order in this suit. Those are the exact claims made by the railroad companies, and the opinion holds, in sub-stance, that those contentions are correct in every particu-lar; and the fact that the opinion states that there is no question in the case that the circuit court has jurisdiction of the subject matter of the suit does not change the fact that the decision, in effect, does decide that the commission has the sole jurisdiction to decide the questions at issue and that the circuit court has no original jurisdiction of the subject matter of the suit. No other interpretation can be placed upon this holding unless the opinion is to also be in-terpreted as holding that the commission is the only proper complainant in the bill of complaint and can maintain this suit in the circuit court to abate the nuisance. There is ab-solutely no such right conferred on the commission by the statute, and I do not think any such holding is intended by the opinion. The opinion does clearly hold, in substance, that since the amendment of 1913 to the Road and Bridge law and the enacting of the Public Utilities act, neither the highway commissioners nor the State Highway Commission can maintain a bill in equity in the circuit court to abate a public nuisance or remove an obstruction in a public high-way at or under an overhead or other railroad crossing. The opinion contains these declarations: "It is only upon

a failure to obey a proper order of the commission that the railroad company becomes a wrongdoer. The Public Utilities Commission, alone, was authorized to represent the public, to order changes in the crossing and to apply to the court for enforcement of its orders." The lawyers of this State in reading said opinion would undoubtedly conclude that the real holding is that the circuit court has not now original jurisdiction to entertain a bill in equity by any person, public or private, to abate a nuisance or remove an obstruction from a public highway at or under an overhead or other railroad crossing. The opinion explains this divesting of the court's jurisdiction conferred by the constitution, with the startling declaration that the new Road and Bridge law and the Public Utilities act have divested all public highway authorities, and every private individual who may be affected by the nuisance, of all right or authority to maintain such a suit in the circuit court, but tells us that the circuit court has jurisdiction of the subject matter of such a suit but is powerless to make any order or decree of any kind in such a case because no one can bring the suit in that court. Then, may I ask, has not the court been most effectively divested of such original jurisdiction, and with which it was invested by our State constitution, if this opinion should be adopted as the law? How can a court have jurisdiction of the subject matter of a suit that no person under any circumstances can bring before it?

We must not be driven away from the real proposition by indirection. Section 12 of article 6 of our constitution provides: "The circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as is or may be provided by law." Take notice that the constitution provides that said courts shall have *original* jurisdiction of all cases in law and equity, and I lay it down as unassailable doctrine that neither the legislature nor this court, nor any other court, can in any way divest the circuit court of such original jurisdiction or in

any way alter or abridge it. Concurrent jurisdiction of such cases may be conferred by the legislature on county or other courts, but no jurisdiction of the circuit court conferred by the constitution can be taken away by the legislature by any act or series of acts. (*Frackelton* v. *Masters,* 249 Ill. 30; *Wilson* v. *People,* 94 id. 426.) How, then, may I ask, can a non-judicial body like said commission be said to have the sole and only original jurisdiction of the subject matter of this suit? The circuit court has jurisdiction in equity to entertain a bill filed by the proper party to remove an obstruction from a public highway that amounts to a public nuisance. This court has repeatedly so decided, and that highway commissioners or persons injuriously affected may maintain such a bill when their right is clear and appertains to the public. (*Fors* v. *Anderson,* 270 Ill. 45; *Hillmer Co.* v. *Behr,* 264 id. 568; *Green* v. *Oakes,* 17 id. 249.) Such jurisdiction is *original* jurisdiction, and the fact that the public nuisance is in the highway under an overhead railroad crossing has nothing to do with the jurisdiction of the court. Reviewing an order of the commission on appeal or granting a writ of *mandamus* to compel obeyance of an order of the commission by the circuit court is not exercising the original jurisdiction of the court that I am considering in this case, and the opinion I am answering merely dodges the question in an effort to show that it is not ousting the circuit court's jurisdiction when it holds that the public nuisance must first be considered by that body. The real question is, Can the commission, even to the exclusion of the circuit court, have jurisdiction or authority to settle the questions presented by this bill? The answer must necessarily be, no.

It is undoubtedly a clear proposition that the Public Utilities Commission is absolutely without authority to entertain or decide a single issue in this case, and my best guess would at all times have been that the commission would have answered promptly that it had no such authority or juris-

diction. The issues are plain and simple, and are: (1) Are defendants in error proper parties complainant in the bill? (2) Are the posts obstructions to the highway or a public nuisance that the proper road authorities have a right to have abated? (3) Were plaintiffs in error the guilty parties that placed them in the road? (4) Had the circuit court the authority or jurisdiction to decide the issues and to enter the order that it did enter that plaintiffs in error remove the obstructions and pay the costs of the suit? A moment's reflection upon the proposition seems to me ought to be convincing that the commission has no jurisdiction or authority to decide any of those questions, whether the matter was put up to it by way of a bill in equity or by any form of petition calling on it to act and to decide as to such matters. I submit that the foregoing were the very questions, and the only questions, decided by the circuit court, and these simple truths must not be lost sight of in this case.

As the structures complained of existed when this suit was begun, there was not the least ground for a finding or a contention that the structures were dangerous to either the traveling public or to any railroad employee or passenger on the railroad. These questions were absolutely immaterial to the real issues. No change was contemplated by the railroads at that crossing. The commission had ordered no change of the structures at the crossing. No one had asked for such a change. The court made no order as to how the obstructions should be removed or what changes should be made in the other structures. No question of a change of a grade crossing arose or could arise. The railroad crossed the highway by an overhead crossing more than twenty-two feet above the surface of the highway. There was no determination by anyone that the pillars or obstructions would be removed or the structures changed at that crossing until the court ordered the obstructions removed. No one knew up to that moment that any change was necessary or would be necessary. No one had any

right or authority to make the order made by the circuit court except that court. If the jurisdiction of the commission ever came into being it was after the court entered its final order. Then for the first time the fact became known that a change was a necessity and that a change would be made in the structures. In other words, the best claim the railroads could possibly maintain was that the jurisdiction of the Public Utilities Commission began at the moment the circuit court's jurisdiction ceased, or would begin as soon as a proper petition was filed before the commission for directions as to what changes or structures should replace the old structures to insure the public safety and the safety of the railroad employees and passengers. But the railroad companies displayed their insincerity as to having any interest in the commission's deciding the character of the structures to be built and re-built, by building them of their own motion and without consulting the commission. In other words, they recognized the rights of no one but themselves in obstructing the road or in removing the structures and re-building other structures. Railroad companies are as much entitled to their just and legal rights as the humblest and most helpless citizen of the land, and their duty is as much binding upon them as upon that same humble and helpless citizen. Search every sentence in the opinion or any that may be omitted pertaining to the statutory duty of the commission, and not one phrase or one sentence can be found that authorizes or even suggests any authority for deciding the issues decided by the court or for making the order or decree that the court rendered. The statute provides that the commission shall have power by its order to require the reconstruction or alteration of a crossing whenever it finds, after a hearing, that such reconstruction, alteration, etc., is necessary to promote the safety of the public or of the employees or passengers. It never made such a finding, and could not have made it if it had been asked, as no such unsafe condition existed un-

til it was legally determined that the pillars were a public nuisance and had to be removed for that reason.

I concede that the highway commissioners have no right to maintain this suit as the public highway is a State aid road. They have not, under the statute as amended, authority to order the removal of obstructions that may be placed in any part of this State aid road. That authority is now vested by section 151 of the Road and Bridge act in the State Highway Commission, State highway engineer or county superintendent of highways. (Hurd's Stat. 1921, p. 2801.) I entertain no sort of doubt that the State highway department could have maintained this suit as complainant in the bill, and with it as complainant the decree and order of the circuit court in this case would have to be affirmed if the law applicable to the case should be followed. I feel very sure that the commission has absolutely no right or authority to maintain this suit as complainant or to decide any question presented to the circuit court for decision in any kind of a proceeding before it. Its jurisdiction would properly begin where the jurisdiction of the circuit court ceased and upon proper application to it for orders or directions as to the kind of new structures that would be made necessary by the court's order to remove the pillars that were obstructing traffic and travel on the public highway. When those pillars should be ordered removed by the court as a public nuisance at the suit of the proper party complainant, and not till then, new structures would be required, and what the new structures and changes should be, it would be the province of the commission to decide. By such a course and procedure the circuit court would exercise its proper original jurisdiction to order abated a public nuisance in a public highway, and all duties required by the Public Utilities act to be performed by the commission at that crossing, and necessitated only by the court's order, would be performed by the commission exactly as required and contemplated by section 58 of that

act. It is as clear as the noon-day sun, it seems to me, that if the court should have found that the pillars or posts were not a public nuisance and for that reason could be retained by the railroad companies, the commission would never have had any occasion or authority to act in the case at all, for the plain and simple reason that there would be no basis for any claim that the structures were dangerous to the public or to the employees or passengers of the companies or that they should be removed or changed for any other reason. It was only the court's order to abate the nuisance that could call into action the commission, as the commission had absolutely no authority to determine the question whether or not the pillars were obstructions to travel on the public highway, and for that reason, only, a public nuisance. These propositions seem to me so clear as to demonstrate that there is no basis whatever for the claim in the opinion that the provisions of section 58 of the statute will be in any way abrogated by recognizing the unassailable right of the proper highway officials to invoke the original jurisdiction of the circuit court to first determine that the obstructions were or were not a public nuisance.

I recognize in every way and to the very letter the right and authority of the commission to take jurisdiction and authority when the occasion or the necessity arises for it to exercise such authority, but I vigorously dissent from the contention that it had any authority or excuse to act until the circuit court pronounced its legal conclusion that the obstructions must be removed because a public nuisance, as charged in the bill. The statute absolutely gives it no authority to determine whether or not the posts should be removed because obstructions to travel and for that reason a public nuisance, and certainly not to the exclusion of the circuit court's authority and jurisdiction to settle those questions.