**The Northern Trust Company, Administrator of the Estate of George McElroy, Deceased, Appellee, v. Chicago Railways Company, Appellant.**

### Gen. No. 28,040.

1. STREET RAILWAYS—*contributory negligence of pedestrian as question of fact.* In an action against a street railway for damages for the death of plaintiff's intestate by the negligent operation of a street car, the question of decedent's contributory negligence is one of fact under evidence showing that the headlight on the car was unlighted and that the car was running at excessive speed and making much noise, that the street intersection in question was lighted and that decedent looked towards the car and then started across the street and when the car was about 15 feet distant stopped and then darted forward across the track and is conflicting as to whether the bell was sounded for the crossing.

2. PLEADING—*waiver by pleading over after ruling on demurrer.* A plea of limitations to an amended count in a declaration was not waived by having an order entered that the plea of the general issue to the declaration stand as defendant's plea to that count, after

the sustaining of a demurrer to the plea of the statute of limitations where it is clear that defendant is standing on its plea of limitations, especially since no order was necessary because the general issue had already been filed to the amended count.

3. LIMITATIONS OF ACTIONS—*when new cause not stated by amended declaration.* An amended count which is the same in substance as the original count in its allegations as to the alleged negligent operation of defendant's street car and identical with it in its allegation of the provisions of the ordinance, violation of which is charged as negligence, does not set up a new cause of action subject to the bar of limitations.

4. PLEADING—*admissibility of amended ordinance under allegation charging violation of original.* In an action for damages for negligence alleged to have consisted in the violation of an ordinance requiring street cars to carry lighted headlights, it was not error to admit an amended ordinance in evidence under an allegation charging violation of the original, where the amended ordinance retained the same requirement as to headlights as the original, of which it was simply a continuation.

5. MUNICIPAL CORPORATIONS—*reasonableness of ordinance requiring headlights on street cars.* An ordinance requiring street cars to carry lighted headlights is not void as unreasonable in view of the statutory limitation upon the right to have bright headlights on automobiles, where the ordinance does not require that the car headlights shall be glaring or bright or similar to automobile lights, and the city and defendant have both so construed it for many years; and hence it was not error to admit such ordinance in evidence.

6. MUNICIPAL CORPORATIONS—*Utilities Act not conclusive of power of city to require headlights on street cars.* The admission in evidence of an ordinance requiring street cars to carry lighted headlights was not error over the objection that the ordinance was superseded by the enactment of the Utilities Act of 1913, since the passage of that act did not *ipso facto* annul existing ordinances and vest regulation of such matters in the commission to the exclusion of the municipal corporation in the absence of any provision therein to that effect, especially where the ordinance in question was in effect prior to the passage of the act.

7. MUNICIPAL CORPORATIONS—*presumption of validity of ordinance.* In an action for negligence predicated on the violation of a city ordinance by defendant, the ordinance is admissible in evidence without proof by the plaintiff that it is in force and effect and has not been superseded by inconsistent action by the Public Utilities Commission, the ordinance being presumed valid in the absence of anything appearing to the contrary.

8. MUNICIPAL CORPORATIONS—*validity of ordinance requiring head-*

*light on street car.* An ordinance requiring street cars to carry lighted headlights is not invalid as indefinite and uncertain in requiring brightly lighted lights, where it requires only that the cars shall carry lighted headlights and not that they shall be brightly lighted lights; and such ordinance is admissible in evidence in an action for negligence predicated on violation of the requirement.

9. APPEAL AND ERROR—*necessity for adherence to trial theory on appeal.* Trial of an action for damages for the death of plaintiff's intestate on the theory that recovery might be had if deceased was free from negligence, without any intimation of reliance upon the alleged contributory negligence of an adult beneficiary of the action, who met her death in the same accident, precludes defendant from first raising the negligence of the beneficiary as a defense in an appeal from the judgment against it, no intimation having been made by it at the trial that recovery would be barred by her negligence.

10. NEW TRIAL—*impeachment of verdict for bias and prejudice of juror by affidavit.* It was not error to deny new trial of an action against a street railway company for alleged bias and prejudice of juror on an affidavit averring that in the trial in question such juror qualified himself on his examination as free from prejudice against the defendant, and in a subsequent trial of another action against the same defendant on the day following return of the verdict in the instant case he disqualified himself for prejudice against such defendant, since such an affidavit could not be used to impeach the verdict.

11. HARMLESS ERROR—*when misconduct in examination of witness harmless.* In an action against a street railway company for negligence in the operation of one of its cars, improper cross-examination of the motorman who was running the car in question at the time of the accident in suit, tending to show that he was discharged from employment shortly after the accident, is harmless where the evidence of defendant's negligence is clear and such negligence is substantially conceded.

THOMSON, J., dissenting.

Appeal by defendant from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed. Opinion filed February 20, 1924.

CHARLES LE ROY BROWN, for appellant; JOHN R. GUILLIAMS, FRANK L. KRIETE and JOSEPH D. RYAN, of counsel

No appearance for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff, as administrator of the estate of George McElroy, deceased, brought an action against the defendant to recover damages claimed on account of the negligent operation of one of its street cars as a result of which it struck McElroy and fatally injured him. There was a verdict and judgment in plaintiff's favor for $5,000.

The record discloses that on Sunday evening, June 27, 1920, about 9:45 (daylight saving time), as the deceased and his wife were walking west across Crawford avenue, a north and south street in Chicago, in which the defendant operates a double line of street cars, at the north crosswalk of Thomas street, an east and west street, they were both struck by a southbound street car on which there was no headlight burning. The deceased was thrown to the west side of the street car and his wife to the east side and he died the next day as a result of the injuries received. The evidence shows that the street car was being operated on Crawford avenue from Bryn Mawr avenue on the north to 31st street on the south side of Chicago, Bryn Mawr avenue being about 5½ miles north of Thomas street where the accident occurred; that the motorman and conductor discovered that the headlight would not burn just prior to starting south from Bryn Mawr avenue. The accident occurred just after dark. Crawford avenue at the place in question is occupied for business and resident purposes and there is considerable travel in that street.

Four witnesses testified as to the rate of speed the car was traveling at the time of the accident. For the plaintiff, Morris testified that the car was traveling from 25 to 30 miles per hour; Botheroyd 30 to 35 miles and Harder 30 to 35 miles. For the defendant, the

motorman, Calderwood, testified that he was traveling from 10 to 15 miles per hour, but that he might have been going faster. A witness for the defendant testified that the maximum speed of the type of car in question is 24 miles per hour. All of the witnesses testified that the headlight was not burning. Some that the bell was not rung or that they did not hear it. The evidence further tends to show that just prior to the accident, three women, one of them carrying a baby in her arms, walked across Crawford avenue from the northwest corner of Thomas street, in a southeasterly direction towards the southeast corner of the intersection. Two of them testified on the trial to the effect that before entering the roadway they looked to ascertain if any street car was approaching, but saw none; that when they had about reached the east or northbound street car track, the southbound street car struck the deceased and his wife. There is other evidence in the record that tends to show just prior to the accident two automobiles overtook and passed the street car in question, one of them going to the east of the street car and the other to the west. Witnesses, including the motorman, testified that before the deceased and his wife started to cross Crawford avenue they looked to the north and to the south. The evidence further tended to show that although the brakes were in good order and applied promptly, the car ran a considerable distance after striking the deceased. Some placed the distance at about 175 feet. The motorman stated that he ran about a car's length after the collision.

The defendant concedes that there was considerable evidence tending to show that there was negligence in the operation of the street car, that it was driven at an excessive rate of speed without ringing a bell, and there is no dispute but that the headlight was not burning, but the defendant contends that the evidence shows that the deceased was guilty of contributory negligence, as a matter of law and as a matter of fact,

and, in support of this, it is said that the street car was brightly illuminated by many lights on the inside of the car, which showed through in front of the car onto the street; that the car was making a great noise, since it was traveling at a rapid rate of speed, and that if the deceased had been paying any attention he would have seen the car and avoided injury; that if he did not look, he was guilty of negligence; that if he did look and see the car, he was guilty of negligence in endeavoring to pass in front of it. The motorman testified that the last stop he made before the collision was at Division street, one block north; that as he approached Thomas street, he noticed three ladies walking east across Crawford avenue at the intersection; that he slowed down for them and was ringing his bell; that he then noticed the deceased and wife; that three ladies passed ahead of the car about 75 feet; that when he was about 40 to 50 feet north of Thomas street, the deceased and his wife stopped in the northbound street car track and he thought they were going to let the car pass and he then applied the power all the way; that they were looking at him; that when he was about 15 feet from them, they darted in front of the car; that he endeavored to stop the car at once, but was unable to do so. There is evidence tending to show that the intersection was well lighted; other evidence tends to show that it was rather dark at that place. Upon a careful consideration of all the evidence in the record, we are clearly of the opinion that all reasonable minds would not reach the conclusion that the deceased was guilty of negligence and, in these circumstances, it was a proper case for the jury and they having found that the deceased was not guilty of contributory negligence, we cannot, in view of the evidence in the record, say that their finding in this respect is against the manifest weight of the evidence.

The declaration was in five counts; the first charged general negligence in the operation of the car; the sec-

ond alleged high and dangerous rate of speed; the third, failure to sound a bell; the fourth alleged a violation of the city ordinance which required every street car while being operated at night to be equipped with a brightly lighted headlight; the fifth alleged negligence in operating the car without a sufficient headlight. The defendant filed a plea of general issue. On the trial of the case the plaintiff was given leave to amend the fourth count by striking out the quotation there made from the city ordinance which required street cars to be numbered, have signs upon them and to have a brightly lighted headlight when operated in the nighttime and inserted in lieu thereof other provisions, but which were somewhat different, but not materially so. To this the defendant filed a plea of general issue and of the statute of limitations (so-called). A demurrer was sustained to the latter plea and an order was entered that the general issue filed to the declaration stand as the defendant's plea to the amended fourth count. The defendant contends that the demurrer to its plea should have been overruled. On the other hand, the plaintiff's position is that the point was waived because after the demurrer was sustained the defendant pleaded over by having the order entered above mentioned. We think there is no merit in this latter contention, because it is clear that defendant was standing on its so-called plea of the statute of limitations. And, moreover, the order was unnecessary because the defendant had already filed the general issue to the count as amended. Nor do we think there is any merit in the defendant's contention. The provision of the ordinance set up in the fourth count is the same in substance as that set up in that count as amended, and so far as requiring a headlight at nighttime, the provision is identical. In each it was provided that when a street car was being operated at nighttime it "should be equipped with a brightly

lighted headlight.'' The demurrer was properly sustained to this plea.

1.   When the ordinance was offered in evidence, the defendant objected, the objection was overruled and the ordinance admitted and it is now contended that the admission of this ordinance was error for four reasons:   (a) Because the ordinance pleaded in the original declaration had been amended and superseded by the ordinance offered in evidence before the injury occurred.   Since the amended ordinance retained the same requirement in reference to the headlight, it was but a continuation of the former ordinance and the objection was, therefore, properly overruled.   (b) The second and chief objection to the ordinance is that it was void because ''unreasonable in its requirement of *brightly lighted* headlights on street cars.''   (c) That the ordinance was of no force or effect at the time of the injury because it was passed December 28, 1914, when the police power of cities in reference to the regulation of public utilities, such as street cars, had been withdrawn from cities and other municipalities and vested in the Public Utilities Commission.   (d) That the ordinance is void because it is indefinite and uncertain in requiring a brightly lighted headlight.

(b)   In support of this contention is is argued that brightly lighted headlights on street cars cannot be used with safety on the streets of Chicago; that there is just as much danger from glaring headlights on street cars as from glaring headlights on automobiles; that the statute expressly limits the use of such lights on automobiles, and that the ordinance is so unreasonable as to render it void.   We think the contention is unsound, because the defendant has placed a wrong construction on the requirements of the ordinance and contrary to the construction placed upon it by the defendant company and the City of Chicago for many years; because the testimony of the conductor of the street car in question who testified on behalf of the

254     APPELLATE COURTS OF ILLINOIS.

The Northern Trust Co. v. Chicago Rys. Co., 232 Ill. App. 246.

defendant shows that the headlight on the car in question was the ordinary headlight used on all the street cars; that it consisted of a round globe about 8 or 9 inches in diameter; that it did not throw much light out for the motorman; that the light was not at all like the bright headlights on automobiles. With this evidence in the record, it is apparent that the construction placed on the ordinance by the defendant and the city was not that bright lights were required, but that it only required a rather dim light.

· (c) It is argued especially in the reply brief that upon the enactment of the Public Utilities Act in 1913, the cities' power of regulation over public utilities, which includes street cars, was withdrawn and that all ordinances passed by all municipalities in this respect were *ipso facto* annulled and rendered void; and that thereafter cities and other municipalities were without power to pass any further ordinances in this respect or to enforce those that were already in existence. And in support of this contention: *City of Chicago v. O'Connell*, 278 Ill. 591; *State Public Utilities Commission v. City of Quincy*, 290 Ill. 360; *Chicago Rys. Co. v. City of Chicago*, 292 Ill. 190; *Seattle Elec. Co. v. City of Seattle*, 78 Wash. 203; *City of Manitowoc v. Manitowoc & N. Traction Co.*, 145 Wis. 13; *Stephens v. Chicago, B. & Q. R. Co.*, 303 Ill. 49, and other cases are cited.

In the *O'Connell* case, where there was a conflict between the provisions of a city ordinance passed by the city council in 1907 for the regulation of street cars and an order made by the Public Utilities Commission of Illinois in 1915 covering the same subject-matter, the question arose whether the provisions of the order entered by the commission prevailed over those in the city ordinance. And it was held that in so far as there was a conflict, the order of the commission prevailed. The order there complained of, among other things, required the street car companies of Chicago to display

signs on cars; to operate cars at certain intervals. And it was held that since the enactment of the Public Utilities Law in 1913, these regulatory powers which had heretofore been exercised by cities and other municipalities were transferred to the Public Utilities Commission. The court there said (p. 606): "The order requires only such things to be done by the railway companies as will, in the judgment of the commission, improve the service furnished the public, and in so far as the order conflicts with the ordinances concerning such matters, the order of the commission supersedes and sets aside the provisions of the ordinances."

In the *City of Quincy* case an order was entered by the Public Utilities Commission making effective advanced rates for street car service, the rates being higher than those that had been previously fixed by a city ordinance, and it was held that the order of the commission was binding. To the same effect was the holding in the *Chicago Rys. Co., supra.*

In the *City of Seattle* case, after the enactment of a Public Utilities Law by the legislature of that State, somewhat similar to our own, the city council of Seattle passed an ordinance for the purpose of regulating the operation of street cars, and it was held that although the commission had taken no steps in the matter, yet the city council was without power to legislate on the subject after the enactment of the law, because the law conferred the power on the commission.

In the *City of Manitowoc* case, it was held that the enactment of an Utilities Act by the legislature of Wisconsin did not supersede a contract between the City of Manitowoc and an Interurban Railway Company.

In the *Stephens* case, it was held that the power of the highway commissioners to compel a railroad to remove obstructions to a highway was transferred to the Utility Commission.

From the foregoing, it is clear that the point under consideration was not involved in any of the authorities cited. In the instant case, the ordinance requiring street cars when operated in the nighttime to carry a brightly lighted headlight was in force and effect since 1911, it having been passed by the city council at that time, which was prior to the enactment of the Public Utilities Act by the legislature of this State. And we certainly would not be warranted in holding that by the mere passage of the Utilities Act, ordinances of the character in question were *ipso facto* annulled, unless there was a clear positive provision in that act to that effect, and no such provision has been pointed out. If counsel's contention were sustained, all ordinances of all municipalities in the State touching the manner of the operation of public utilities would be cut up by the roots upon the going into effect of the law. It is clear that such was not the intention of the legislature, because it is apparent that after the law went into effect, a considerable period of time must necessarily elapse before proper and necessary orders could be passed by the Utility Commission.

In passing on a somewhat similar proposition, the Appellate Court of this State, speaking by Mr. Justice Graves, in the case of *Central Illinois Public Service Co. v. City of Sullivan,* 215 Ill. App. 494, said (p. 499): "Neither is it material, if true, that the City of Sullivan had passed an ordinance which conflicts with the order of the State Public Utilities Commission. In so far as the order of the Public Utilities Commission conflicts with city ordinances concerning matters over which the commission have jurisdiction, the order of the commission supersedes and sets aside the provisions of the ordinances. *City of Chicago v. O'Connell,* 278 Ill. 591-606."

A final contention on this phase of the case is made that even if the ordinance should be deemed in force and effect until the commission took positive action

inconsistent therewith, the burden of proof was on the plaintiff to show that the commission had taken no such action. We cannot agree with this contention. The ordinance having been offered in evidence, and nothing appearing to the contrary, it is presumed to be valid. And when it was received in evidence, we think this was all that plaintiff was required to prove in this respect.

(d) What we have said in paragraph (b) is sufficient to show that this contention cannot be maintained.

2. The defendant further contends that the judgment is wrong and should be reversed because the court in its instructions ignored the fact that no recovery could be had if the deceased widow was guilty of contributory negligence because she was one of the beneficiaries. On December 6, 1923, the Supreme Court of this State definitely settled the law to the effect that in an action brought under chapter 70 of the Revised Statutes for the wrongful death of a person, no recovery can be had if any of the beneficiaries were guilty of contributory negligence. *Hazel v. Hoopeston-Danville Motor Bus Co.*, 310 Ill. 38. Prior to that time, it had been generally understood that the law in such kind of an action barred recovery only where the deceased was a minor and whose death was caused in part by an adult beneficiary. *Deming v. Chicago Rys. Co.*, 222 Ill. App. 645, the only recent intimations to the contrary appearing in the case of *Klassens v. Chicago City Ry. Co.*, 230 Ill. App. 615.

In the instant case recovery would be barred, if the negligence of the widow materially contributed to the accident which resulted in her husband's death, provided the case was tried upon that theory in the trial court. It is elementary that one is not permitted to try a case upon one theory in the trial court and, when defeated, shift their position in a court of review.

In the instant case, it is clear that counsel for both

parties tried the case on the theory that recovery might be had if the deceased were free from negligence and there was no intimation that recovery would be barred if the widow was guilty of any negligence. Such being the theory upon which the case was tried in the lower court, the defendant is not in a position to urge successfully its contention made here for the first time. The record discloses that counsel for the defendant in his examination of a juror on his *voir dire* said: "This man (the deceased) was crossing the street in the nighttime up there and he claims, or it is claimed in his behalf, that while he was exercising due care for his own safety, he was run upon by the negligence of the motorman of the car and that he was killed. The burden of proof is on them to prove they are entitled to a verdict; they must prove both propositions, that he was exercising the care that the law requires of him, and that while he was so doing, he was hurt and killed through the fault of the street car company. Of course, if they prove that by the preponderance of the evidence, they are entitled to a verdict for something. The amount will be put to you later." And the court gave at the request of the defendant an instruction "that plaintiff could not recover unless it proves by the preponderance or greater weight of the evidence that the accident in question occurred under such circumstances as would, if death had not ensued, have entitled the deceased to maintain an action and recover damages for whatever injuries he sustained. And the court further instructs you that before the deceased could recover against the defendant * * * had he lived, it would be incumbent upon him to prove by preponderance or greater weight of evidence, not only that the defendant was guilty of the negligence charged * * * but it would also be incumbent upon him to prove that he himself did not by any careless or negligent act cause or contribute to bring about the injury or death complained of." From this instruction we think it appears that it was

the intention and understanding of the defendant's counsel that it included all the necessary facts which must be proven by the plaintiff to warrant a recovery. It contained nothing with reference to the widow's conduct and upon reading of the record it is clear that on the trial the question of the conduct of the widow in the instant case was by no one considered important. In these circumstances, the contention of the defendant cannot be maintained.

3. A further point made is that a new trial should be awarded because of the bias and prejudice of a juror. That on the examination of one of the men who sat on the jury, touching his qualifications, he testified that he never had any experience and knew of no reason why he could not be a fair juror to both sides; that he never had any trouble with street car companies in Chicago and had no prejudice against them. That these answers were made on April 17, 1922. The verdict was rendered in the instant case on the day following. And on the 19th of April, this juror after the return of the verdict in the instant case was being examined as a prospective juror in another street car case, wherein he stated, in response to questions put to him, that he had no prejudice against a man driving an automobile, but being an owner of an automobile he might have some prejudice against the street car company, because of some experience he had had with motormen; that he had never had any suits against them, but had had some close escapes from them; that on account of his past experience in driving his automobile he would be prejudiced against street car companies, and that he did not believe he could give such company a fair trial. This latter matter was brought to the attention of the trial judge on the motion for a new trial by way of an affidavit. We think the court properly denied the motion for a new trial. Such affidavit as was offered here could not be used to impeach the verdict. *Sanitary Dist. of Chicago v. Cullerton*, 147 Ill. 385.

4. A further point is made that there was prejudicial error committed by counsel for plaintiff in the cross-examination of defendant's motorman. The motorman testified that at the time of the trial he was working for the Northwestern railroad, and that he had worked as motorman but three months for the street car company. He was then asked by plaintiff how long he had worked for the Northwestern. This was objected to. The witness stated he had been working for that company since he quit working for the street car company. He was then asked when he quit working for the street car company and he answered June 30, 1920. Thereupon a juror asked "what was that date?" and the witness again answered June 30, 1920. Counsel argues this was highly improper, because it was apparent that counsel for plaintiff was endeavoring to get before the jury the fact that he quit work for the street car company three days after the accident, which would indicate that he had been discharged by the street car company for his negligence in causing McElroy's death. The error, if any, is not material here because the evidence of the defendant's negligence is clear. In fact it is substantially conceded by defendant's counsel. In these circumstances the error, if any, was harmless.

5. A further complaint is that the court erred in giving instructions one and two at the request of plaintiff. And it is said that these instructions authorized a recovery if the jury found from the evidence that the defendant was guilty as charged in any count of the declaration; that the fourth count of the declaration was fatally defective; and that even if the jury believed that every allegation of it had been proved, they would not find enough to make out actionable negligence. This count alleged a violation of the ordinance which required that street cars be equipped with brightly lighted headlights when operated in the nighttime. And it is argued that the ordi-

nance is void for the several reasons above mentioned, which reasons we have held untenable. And further that the instruction warranted the jury in finding for the defendant because there was no headlight, although they might believe the car was sufficiently lighted otherwise. We think this argument is unsound. It was averred in the count that the deceased was fatally injured because of the failure of the defendant to comply with the ordinance which required that the street car be equipped with a brightly lighted headlight. Nor is the contention tenable that the instruction told the jury, in effect, that a violation of the ordinance was negligence *per se*. We think this is a misapprehension. The count alleged the failure of the defendant to have the street car equipped with a brightly lighted headlight, and averred that defendant so carelessly operated the street car without such headlight that it struck the deceased who was in the exercise of due care. We think the contention is unsound and that there was no prejudicial error in giving the two instructions.

The judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

TAYLOR, P. J., concurs.

THOMSON, J., dissenting: In my opinion the fourth count, as amended April 18, 1922, was not subject to the one-year-limitation period provided for in the Injuries Act, for the count, as amended, set up in substance the same cause of action as that set up in the original count. So far as any limitation or condition imposed on the plaintiff's right of action is concerned, the ordinance pleaded in the amendment must be considered as a re-enactment of the ordinance pleaded in the original count. Ill. St. ch. 131, sec. 2. [Cahill's Ill. St. ch. 131, ¶ 2.]

But, I am further of the opinion that neither the original fourth count nor the amended count set up a

262    APPELLATE COURTS OF ILLINOIS.

The Northern Trust Co. v. Chicago Rys. Co., 232 Ill. App. 246.

good cause of action, for the first was based on the ordinance of 1911, regulating the subject of headlights on cars operated in Chicago by street railway companies, and that ordinance was abrogated and nullified by the Public Utilities Act of 1913; and the amended count was based on the ordinance covering the same subject, passed in 1914, and that ordinance was void because of the passage of the Utilities Act of 1913.

When the legislature passed the Utilties Act of 1913, and gave to the Utilities Commission, under section 57 of that Act, power to require all public utilities to maintain their equipment "in such manner as to promote and safeguard the health and safety of its employees, passengers, customers, and the public, and to this end to prescribe, among other things, the installation, use, maintenance and operation of appropriate safety or other devices or appliances, * * * to establish uniform or other standards of equipment, and to require the performance of any other act which the health or safety of its passengers, customers or the public may demand," that act, in my opinion, operated to abrogate and nullify any and all city ordinances then in effect, covering the matters placed by the act within the jurisdiction of the Utilities Commission. Both the Utilities Commission and the city are creatures of the State. Both of them may not, at the same time, have police power over the same subject-matter. The power imposed in the city and State, to regulate street railways under which the city passed its ordinance of 1911, was in effect canceled and nullified and turned over by the State to the Public Utilities Commission, by the legislative Act of 1913. At that time all power of the city, over the subject-matter, ceased and it could not thereafter take any action either in the way of passing new ordinances on the subject or enforcing old ordinances. It is argued that until the Public Utilities Commission had done some act or issued some order, in exercise of its power, to regulate street railway headlights, under the act of 1913, such

ordinances of the City of Chicago as may have been in force at the time the act of 1913 went into effect should be considered as operative. In my opinion, that argument is not sound. After the act of 1913 went into effect, the City of Chicago was without any power to take any action concerning these matters within the purview of the act and which were the subject of the police power granted by that act to the Utilities Commission, whether such action consisted of new legislation or an attempt to enforce old legislation. Any such attempt could have been successfully met by interposing the act of 1913, wherein the police power covering the subject-matter was placed, by the legislature, in the Utilities Commission. A municipality may not be said to have any power to enforce legislation on a subject on which it has lost the right to legislate. If it has lost the right to exercise the power, the power is gone and any ordinance previously passed, as an exercise of it, is a dead letter. And certainly any attempt to pass a new ordinance would be void. The case of *Village of Franklin Grove v. Chicago & N. W. Ry. Co.*, 196 Ill. App. 167, involved an ordinance passed after the Utilities Act of 1913 was approved, but before that act went into effect, and in his decision Mr. Justice Dibell suggested the question whether, under section 57 of the Act, the municipality there involved was in any position to enforce the ordinance except through the State Public Utilities Commission. See also, *West Chicago Park Com'rs v. City of Chicago*, 152 Ill. 392, 406.

Counsel for plaintiff, in contending that the city had the power to legislate as to headlights and that any ordinance on that subject, in effect at the time the act of 1913 was adopted, would continue operative until the Utilities Commission took some action, refer to *City of Chicago v. O'Connell*, 278 Ill. 591, and *Central Illinois Public Service Co. v. City of Sullivan*, 215 Ill. App. 494. In both of these cases the courts were called

upon to construe regulations which the Utilities Commission had made and they are not in point here.

That a city would not have the power to legislate on the question of the equipment of a public utility, subsequent to the enactment of a State law placing jurisdiction of that subject-matter in a Utility Commission, even though the commission may have taken no action pursuant to the power granted it, was clearly shown in *Seattle Elec. Co. v. City of Seattle,* 78 Wash. 203. The case of *City of Manitowoc v. Manitowoc & N. Traction Co.,* 145 Wis. 13, cited in the *City of Seattle* case, involved a contract ordinance. In that case the court intimated that if the ordinance there involved had not been a contract ordinance but one involving the exercise of police powers generally, the ordinance would have ceased to be operative upon the enactment of the State act, giving jurisdiction to the railroad commission, "without any affirmative action upon the part of the railroad commission."

The case of *Stephens v. Chicago, B. & Q. R. Co.,* 217 Ill. App. 1, 303 Ill. 49, was a case involving a bill for a mandatory injunction to compel the removal of part of an overhead bridge by the defendant railroad company. The bill was filed by the township roadway commissioners, under a law which was in effect prior to the adoption of the Public Utilities Act, under which prior law the township roadway commissioners had authority to file such a bill as the one involved. The court held that the authority over railroad crossings of roadways and the place, manner, terms and conditions of the crossings, as well as their construction, reconstruction, alteration or improvement, had been conferred by the legislature upon the Public Utilities Commission. The court observed that the latter authority in its nature must be exclusive, and in construing it the court said: "It is immaterial that no order has been made by the commission. It is the only body authorized to order a reconstruction, alteration or change in a crossing and the fact that it has made no

order for that purpose does not authorize any other individual, official or board to assume authority to do so." It seems to me the decision of our Supreme Court is authority for holding that the power of the city over the subject of the regulation of the equipment of public utilities was gone, after the Public Utilties Act was enacted in 1913, and after that time municipalities had no power in the premises, irrespective of the question of whether or not the Public Utilities Commission had taken any specific action under the powers granted to it by the act of 1913. It is my opinion that after that time, even though the Utilities Commission might have taken no action, the city was without any power to legislate in the matter, and for that reason the ordinance of 1914 was void and it was error on the part of the trial court to admit it in evidence and give instructions based upon it. I am further of the opinion that after that time, even though the commission may have taken no action in the premises, the city was without any power to enforce the provisions of its ordinance of 1911, and it therefore became inoperative and ineffective.

. The injury involved in this case took place in 1920 when the act of 1913 was in effect. Before this case was tried, the act of 1921, known as the Illinois Commerce Commission Act [Cahill's Ill. St. ch. 111a, ¶ 16 *et seq.*] was passed. While that act superseded the act of 1913, it should also be noted that article VI of the act of 1921 [Cahill's Ill. St. ch. 111a, ¶ 100 *et seq.*] expressly vested in the Commerce Commission all the powers and jurisdiction pertaining to the regulation of the equipment of street railways, which the Utilities Commission had possessed under the act of 1913, until any given municipality should, by referendum, adopt the act of 1921, and thereby acquire exclusive jurisdiction of that subject. Chicago has never adopted the act of 1921 as provided by article VI and, therefore, for this, as well as other reasons, it could have no effect on this case.